IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GREGORY PANKO,           )
                         )
         Plaintiff,      )
                         )
    v.                   )    No. 05 C 542
                         )
DISCOVER FINANCIAL SERVICES LLC,  )
DISCOVER BANK, and MARC TAYLOR    )
                         )
         Defendants.     )

### MEMORANDUM OPINION AND ORDER

This is an action brought by plaintiff Gregory Panko ("Panko") for breach of contract and for a violation of 15 U.S.C.A. § 1681m (2005), a provision of the Fair Credit Reporting Act ("FCRA"), against defendants Discover Financial Services LLC ("Discover"), Discover Bank (the "Bank") and Marc Taylor ("Taylor"). Defendants have filed a motion for summary judgment. For the reasons stated below, I grant that motion.

I.

Summary judgment is appropriate where the record and affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Lexington Ins. Co. v. Rugg & Knopp, Inc.*, 165 F.3d 1087, 1090 (7th Cir. 1999); Fed. R. Civ. P. 56(c). I must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Evidence presented in opposition to a motion for summary judgment must be admissible in content, though it need not be in an admissible form. *Payne v. Pauley*, 337 F.3d 767, 775 n.3 (7th Cir. 2003) (citing *Stinnett v. Iron Works Gym/Executive Health Spa, Inc.*, 301 F.3d 610, 613 (7th Cir. 2002)); *see also Juarez v. Menard, Inc.*, 366 F.3d 479, 484 n.4 (7th Cir. 2004) (noting that affidavits submitted in opposition to summary judgment must be based on personal knowledge such that they would be admissible at trial).

II.

The basic facts relevant to defendants' motion are not in dispute. DFS is the servicing affiliate of the Bank, the issuer of the Discover Card. Taylor is employed by DFS in its Cardmember Assistance department. Panko applied for and received a Discover Card account (the "account") in December of 1992. That account was governed by the Discover Platinum Cardmember Agreement (the "Cardmember Agreement") between the cardholder (Panko) and the Bank. According to the Cardmember Agreement, the Bank reserved the right to "postpone for up to 15 business days reducing . . . unpaid balances by the amount of any payment that [it] receive[d]." The Bank also reserved the right to "cancel or suspend [the cardholder's] Account at any time without notice" and stated that it "may choose not to renew [the cardholder's] Account (beyond the expiration date shown on the face of a Card) without notice."

Panko claims that on January 7, 2003, he made payments on his account in the amount of $1,000 through a cash payment of $200 and a check payment of $800. He contends that although his check cleared on January 9 or 10, DFS told him it would not credit his account with that amount until January 17, 2003. DFS sent Panko a letter on January 9 in which it stated that a payment of $1,000 was posted to his account on January 7, but "for security purposes, your available credit will not increase by the amount of the payment until 01/17/03 so that we can ensure that the check clears."[1]

An affidavit from an employee of DFS states that DFS records show that DFS "flagged" Panko's account in January of 2003 "for a security review" due to Panko's "unusual and suspicious pattern of payments and activity." DFS also acknowledges that in January of 2003, DFS reviewed Panko's consumer credit report.[2] On January 21, 2003, DFS cancelled Panko's account. The DFS employee testified

---

[1] Panko also alleges, without evidence, that DFS "completely withheld all useable credit regarding the said account from plaintiff, including the $800.00 check payment amount of January 7, 2003, and did not make any useable credit available to plaintiff during the period of January 17-20, 2003." Panko appears to allege that this credit was wrongfully withheld, although there is no evidence that Panko had any available credit on the account at this time.

[2] Panko also contends that DFS obtained his credit report from Experian Information Solutions, Inc., on January 8 and 9, but provides no admissible evidence establishing that the credit report was obtained on those specific dates.

3

that DFS records show that Panko's account was cancelled "in connection with the security review process." Panko's account was delinquent at the time it was closed, and DFS eventually referred the account to a collection agency. Panko attempted to negotiate with defendants to have his account reopened, but those attempts were unsuccessful. He subsequently filed this complaint alleging that defendants breached their contract with him and violated 15 U.S.C.A. § 1681m. Panko seeks an injunction ordering defendants to grant him a credit account of $12,000, as well as damages and costs. Defendants' motion for summary judgment followed.

III.

Under the FCRA, if any person takes adverse action against a consumer "that is based in whole or in part on any information contained in a consumer report," the person taking the adverse action must provide notice to the consumer. 15 U.S.C.A. § 1681m(a). Prior to 2003, consumers had a private right of action to enforce this section under 15 U.S.C.A. §§ 1681n and 1681o. However, the Fair and Accurate Credit Transactions Act ("FACTA"), Pub. L. No. 108-159, § 311(a), 117 Stat. 1952, 1988-89 (2003), amended § 1681m. It amended § 1681m(h)(8)(B) to provide that "[t]his section shall be enforced exclusively under section 1681s of this title by the Federal agencies and officials identified in that section." *Id.* Numerous opinions from courts within this district have affirmed that FACTA abolished private rights of

action to enforce § 1681m. *See, e.g., Killingsworth v. Household Bank (SB), N.A.*, No. 05 C 5729, 2006 WL 250704, at *3 (N.D. Ill. Jan. 31, 2006) (compiling numerous decisions). The Seventh Circuit has also indicated, in dicta, that FACTA "abolishes private remedies for violations" of a different subsection of § 1681m. *See Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 950-51 (7th Cir. 2006) (noting that FACTA abolished private remedies for violations of § 1681m(d)(1)(D)). Based on these decisions it is clear that, were defendants to use Panko's credit report to take adverse action against him today without following the requirements of § 1681m(a), Panko would have no private right of action.

The difficulty with this case is that Panko alleges that defendants violated § 1681m(a) before FACTA went into effect, but Panko filed his claims against defendants in 2005, which was after the effective date of FACTA. This raises the question of whether FACTA bars a consumer's claims about violations that occurred before FACTA's effective date but on which the consumer did not bring suit until after FACTA went into effect.

The Seventh Circuit's opinion in *Murray* suggests, in dicta, that FACTA does not bar such claims. In *Murray*, the Seventh Circuit addressed claims brought under a different subsection of § 1681m. The claimant in *Murray* filed suit in 2005 about purported violations of § 1681m that appear to have occurred in 2004. *See Murray v. GMAC Mortgage Corp.*, No. 05 C 1229, 2005 WL 3019412, at

5

*1 (N.D. Ill. Nov. 8, 2005) (lower court decision on unrelated class certification issue describing underlying allegations in the case). The Seventh Circuit began its opinion in *Murray* by stating that the change to § 1681m created by FACTA "does not apply to offers made before its effective date and thus does not affect this litigation." 434 F.3d at 951. Defendants acknowledge this language from *Murray* but state that it is only *dicta* and is therefore not binding on this court, noting that the lower court in *Killingsworth* reached the same conclusion. *See Killingsworth*, No. 05 C 5729 (N.D. Ill. Feb. 28, 2006) (minute order denying motion to reconsider grant of judgment on the pleadings for defendant). The *Killingsworth* opinion is the only opinion defendants cite for the proposition that FACTA should apply to bar plaintiff's suit here.

In *Landgraf v. USI Film Prods.*, 511 U.S. 244 (1994), the Supreme Court explained that the retroactive application of a new law to conduct completed before its enactment may violate due process if it "impair[s] rights a party possessed when he acted, increase[s] a party's liability for past conduct, or impose[s] new duties with respect to transactions already completed." *Id.* at 280. For this reason, if a statute would operate retroactively, "it does not govern absent clear congressional intent favoring such a result." *Id.*

As the Seventh Circuit explained in *Lara-Ruiz v. Immigration and Naturalization Serv.*, 241 F.3d 934 (7th Cir. 2001), the

*Landgraf* opinion provides a method for determining whether statutory amendments may be applied retroactively to pending cases. *Id.* at 943-44. First, I must determine "whether Congress has expressly prescribed the statute's proper reach." *Id.* at 943 (citing *Landgraf*, 511 U.S. at 280). If so, I must apply the statute as Congress directed. *Id.* (citing *Hughes Aircraft Co. v. United States*, 520 U.S. 939, 946 (1997); *Landgraf*, 511 U.S. at 280; *Reyes-Hernandez v. Immigration and Naturalization Serv.*, 89 F.3d 490, 492 (7th Cir. 1996)). If Congress' intent is unclear, I must ask whether the statute would have a retroactive effect if it applied to conduct before its enactment. *Lara-Ruiz*, 241 F.3d at 944. If so, I must "invoke the judicial presumption against applying the provision retroactively." *Id.*

Applying this test to FACTA, Congress' intent about its retroactivity is unclear. FACTA does not explain whether its amendments to § 1681m are to be prospective or retroactive. The section of FACTA setting forth its effective dates only provides that the Board of Governors of the Federal Reserve System and the Federal Trade Commission "shall jointly prescribe regulations in final form establishing effective dates for each provision" of FACTA, and that these regulations "shall establish effective dates that are as early as possible, while allowing a reasonable time for the implementation of" FACTA's provisions]. FACTA § 3, 117 Stat.

7

at 1953. The regulation establishing the effective date for § 311(a) of FACTA (the section amending 15 U.S.C.A. § 1681m) also does not provide guidance on the retroactivity of FACTA. *See* 12 C.F.R. § 221.1(3). I must therefore proceed to the second step of the *Lara-Ruiz* analysis and consider whether FACTA would have retroactive effect if applied to Panko. *See Lara-Ruiz*, 241 F.3d at 944.

I find that FACTA would have retroactive effect if applied to bar Panko's private right of action against defendants. At the time Panko's cause of action against defendants arose, when defendants purportedly failed to inform him that they had cancelled his account due in part to a review of Panko's credit report, Panko had a private right of action under § 1681m to redress defendants' violation. FACTA removed that private right of action. Therefore, I cannot apply FACTA to bar Panko's claim for damages under § 1681m.[3]

---

[3]Defendants argue that applying FACTA to Panko's claims would not have a retroactive effect because Panko did not file his suit until after FACTA's enactment. Defendants contend that *Langraf* and its progeny would only apply if Panko's suit was pending before FACTA's enactment. It is true that this was the case in *Langraf* itself, and the Supreme Court stated that the question it was addressing in the *Langraf* opinion was whether the statute at issue applied to cases pending at the time the statute went into effect. *See* 511 U.S. at 249-50; *see also Lara-Ruiz*, 241 F.3d at 944-45 (relying on this same distinction to find applying statute at issue to alien removal proceedings initiated after the passage of the statute would not have retroactive effect). Defendants rely on the *Lana-Ruiz* opinion for this proposition, but the factual situation in *Lana-Ruiz* renders that opinion inapplicable here. In *Lana-Ruiz*, the statute at issue prevented aliens convicted of certain crimes

In Panko's complaint he also requests injunctive relief, and it is not clear whether he is seeking injunctive relief under his breach of contract claim or under his § 1681m claim. To the extent Panko is seeking injunctive relief under his § 1681m claim, *Langraf* does bar that relief. The *Langraf* opinion makes clear that "[w]hen the intervening statute authorizes or affects the propriety of prospective relief, application of the new provision is not retroactive." 511 U.S. at 273-74 (explaining that, because injunctive relief operates *in futuro*, a plaintiff has no "vested right" in the decree entered by the trial court)(citing *Am. Steel Foundries v. Tri-City Cent. Trades Council*, 257 U.S. 184, 201 (1921); *Hall v. Beals*, 396 U.S. 45, 48 (1969); *Duplex Printing Press Co. v. Deering*, 254 U.S. 443, 464 (1921)).

IV.

Because I conclude that FACTA does not bar Panko's § 1681m claim against defendants, I must consider the merits of that claim. First, I agree with defendants that Panko has no claim against Taylor under § 1681m because there is no evidence that Taylor took

---

from seeking a previously-available waiver of deportation. 241 F.3d at 937. Applying the statute to Lana-Ruiz had no retroactive effect because, until the government initiated removal proceedings against him, Lana-Ruiz had no interest in seeking a waiver of deportation. *Id.* at 944-45. Here, Panko had an interest in bringing an action against defendants as soon as they purportedly violated § 1681m, no matter when he actually brought his suit. As *Langraf* itself noted, whether a statute has retroactive effect depends on whether a case "implicates a federal statute enacted after the events in suit" without mention of whether the statute was enacted after the suit itself. *Landgraf*, 511 U.S. at 280.

9

any adverse action against Panko. There is no evidence that Taylor was responsible for the cancellation of Panko's account; he appears only to have assisted Panko after the cancellation had occurred.

Although I ultimately agree that, taking the evidence in the light most favorable to Panko, Panko cannot establish a § 1681m claim against DFS or the Bank, I do not agree with defendants that there is no evidence that the Bank and DFS closed Panko's account due to information in his credit report.[4] DFS contends that its internal records show that Panko's account was closed because of an "unusual and suspicious pattern of payment and charge activity." However, defendants also acknowledge that DFS reviewed Panko's consumer credit report in January of 2003. Although Panko has no direct proof that DFS and the Bank cancelled his account because of something in his consumer credit report, an inference could easily be drawn from the close proximity of the credit report review to the cancellation of his account that the review of Panko's credit report played some role in the cancellation. I therefore cannot dismiss Panko's claim solely on this basis.

---

[4] Defendants argue that Panko has no § 1681m claim against the Bank because, although Panko's account was with the Bank, the evidence is that DFS was the servicing affiliate of the Bank and was responsible for terminating Panko's account. However, Panko's account was ultimately with the Bank and so the cancellation of Panko's account was an adverse action in which both the Bank and DFS participated. Under § 1681m, both the Bank and DFS would have had a duty to ensure Panko received notice that his credit report was the basis for an adverse action.

I agree with defendants, however, that Panko has presented no evidence to show that he suffered either actual or statutory damages. The FCRA allows a plaintiff to recover actual damages for even negligent violations. 15 U.S.C.A. § 1681o(a)(1). However, a plaintiff must show a causal relation between a violation of the FCRA and "the loss of credit, or some other harm." *See, e.g., Crabill v. Trans Union, LLC*, 259 F.3d 662, 664 (7th Cir. 2001). Here, Panko has not shown any loss of credit or other harm from DFS and the Bank's failure to provide him with notice. Therefore, he cannot recover actual damages. Likewise, Panko has presented no evidence that would entitle him to statutory damages because he has presented no evidence to show that DFS or the Bank willfully failed to comply with § 1681m as required for statutory damages under 15 U.S.C.A. § 1681n. He does not even allege in his complaint or in his statement of facts that DFS or the Bank's purported violations were willful.

Because, even taking the facts in the light most favorable to Panko, there is no evidence that he has suffered damages, Panko's claim against DFS and the Bank must fail. Although § 1681o allows a plaintiff to recover attorneys' fees and costs, Panko has no standing to assert a claim for fees and costs if he cannot establish he suffered damages. *See Crabill*, 259 F.3d at 665 (holding that where a plaintiff cannot show damages under the FCRA, "there is no case or controversy between the parties within the

meaning of Article III of the Constitution" and so a plaintiff "cannot base standing on a claim for attorneys' fees"). I therefore grant summary judgment for defendants on Panko's § 1681m claim.

V.

Panko has also brought a claim against defendants for breach of contract. Interpreting Panko's submissions generously, this claim appears to stem from (1) the Bank's failure to credit Panko's account to reflect payment of the $800 check that cleared on January 9 or 10, 2003, (2) the purported failure to make any credit available on his account on January 17, 2003, (3) the closure of his account on January 21, 2003, and (4) the failure to allow Panko to reopen his account or obtain a new account. I find that, even taking the facts in the light most favorable to Panko, Panko cannot establish that defendants breached any contract with him.

First, Panko's Cardmember Agreement was with the Bank; neither Taylor nor DFS had any contractual obligation to Panko, so Panko has no breach of contract claim against either of them. Second, I agree with defendants that nothing Panko alleges the Bank did constitutes a breach of its agreement with Panko. The Cardmember Agreement allows the Bank to take up to 15 business days to translate payments into available credit. Here, even if Panko's check cleared on January 9, 2003, under the Cardmember Agreement the Bank would have had until January 30, 2003, to translate that

payment into available credit. Because the Bank cancelled Panko's account on January 21, it never made the credit available to him. In addition, the Cardmember Agreement allowed the Bank to cancel or suspend Panko's account at any time, so it was not a breach of contract for the Bank to suspend and ultimately cancel Panko's account. Finally, the Bank was not obligated to reopen Panko's account or grant him a new credit account.[5] Therefore, I grant summary judgment to defendants on Panko's breach of contract claim.

VI.

For the above reasons, I grant summary judgment to defendants, and Panko's claims are dismissed.

ENTER ORDER:

*Elaine E. Bucklo*
Elaine E. Bucklo
United States District Judge

Dated: October 23, 2006

---

[5] Panko argues in his response to defendants' motion for summary judgment that the Bank's failure to credit his check payment to his account until January 17 is contrary to public policy, but I find no basis to conclude that this is true.

13